IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENVILLE

| | |
|---|---|
| MARK A. SCOTT and PAUL E. SCOTT )<br>    Plaintiffs, )<br>)<br>) CASE NO. 2:08-cv-296<br>)<br>v. ) Greer/Carter<br>)<br>REGIONS BANK, *et al.,* )<br>    Defendants. ) | |

REPORT AND RECOMMENDATION

I. Introduction

Defendants Helen Scott and Andrea LaFollette (the Defendants) have filed a motion to dismiss Plaintiffs Mark Scott and Andrew Scott's claim brought under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a), seeking proceeds from two life insurance policies administered by defendant Metropolitan Life Insurance Company (MetLife). [Doc. 110]. This motion is before the undersigned Magistrate Judge having been referred for a report and recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons stated herein, it is RECOMMENDED that the Defendants' motion to dismiss be DENIED.

II. Background

The basic allegations of the Plaintiffs' complaint are as follows: Plaintiffs, brothers Mark and Paul Scott, brought this action to recover life insurance proceeds from two policies administered by MetLife (the MetLife policies) and issued on the life of Herbert Andrew Scott, deceased. Mark and Paul Scott are the only children resulting from the marriage of Herbert Andrew Scott and his first wife, Sarah, who died in 1983. The MetLife policies were issued to

1

Herbert Scott through his employment at Eastman Kodak Company and its subsidiary, Tennessee Eastman Kodak Company. Plaintiffs' father assigned these MetLife policies to an irrevocable trust (the Trust) to which Mark and Paul Scott, in 2006, were the sole beneficiaries. First National Bank of Sullivan County was originally designated as the trustee of the Trust. First National Bank of Sullivan County was succeeded by AmSouth Bank which was then succeeded by Regions Bank. Regions Bank is currently the trustee charged with administering the Trust. However, instead of paying the proceeds of the MetLife policies to the Trust upon Herbert Scott's death, MetLife paid the proceeds to Herbert Scott's second wife, Helen Scott. Mark and Paul Scott further allege:

> Helen Scott and Defendant [Andrea] Lafollette [daughter of Helen Scott and step-daughter of Herbert Scott], surreptitiously contacted MetLife claiming ownership of the MetLife insurance proceeds. Then, Defendant Lafollette or an employee of Defendant Edward Jones contacted an assistant branch manager of Defendant Regions Bank representing herself to be the daughter of Mr. Scott, and caused the assistant branch manager of [Regions Bank], not associated with the Trust Department, to prepare a letter addressed to "Whom It May Concern re H. Andrew Scott" advising that there was not a current assignment in favor of [Regions Bank] on "the above referenced client." This letter was then faxed to Defendant Edward Jones.[1]

(Plaintiffs' Amended Complaint ¶ 36, Doc. 108, May 5, 2009). Plaintiffs also allege that MetLife did not contact the trust department of Regions Bank and instead paid the proceeds to Helen Scott despite having notice that the Trust administered by Regions Bank was the beneficiary of the two MetLife policies. Plaintiffs allege that the proceeds from the MetLife policies are on deposit at defendant Edward Jones and Associates (Edward Jones) in Kingsport, Tennessee in the name of Helen Scott and/or Andrea LaFollette. Among other claims, Plaintiffs assert fraud and conversion against Helen Scott and Andrea LaFollette and a conspiracy among

---

[1]Edward Jones is identified in the Amended Complaint as Edward Jones and Associates, a Florida company authorized to do business in Tennessee. (Amended Complaint at ¶ 7, Doc. 108).

Helen Scott, Andrea LaFollette, and Edward Jones to engage in tortious interference with the contracts between Plaintiffs and Regions Bank and MetLife. Plaintiffs assert MetLife breached its fiduciary duty under ERISA to Plaintiffs and that Regions Bank breached its duty as trustee of the Trust by negligently administering the Trust.

Regions Bank has filed a cross-claim against MetLife and Helen Scott. Among other claims, Regions Bank asserts MetLife has arbitrarily and capriciously failed to pay the proceeds from the MetLife policies into the Trust, for which Regions Bank is the trustee, in violation of various sections of ERISA and that Helen Scott, with aid from Andrea LaFollette who was acting as her attorney-in-fact, engaged in a course of conduct to intentionally misrepresent to MetLife and Regions Bank their rights to the proceeds from the MetLife policies thereby converting those proceeds for Helen Scott.

Helen Scott has filed cross-claims against Regions Bank and MetLife asserting, *inter alia*, that if it is ultimately determined she is not entitled to the proceeds of the MetLife policies, then Regions Bank acted negligently in advising MetLife there was no trust and MetLife acted negligently for identifying her as the beneficiary of the two MetLife policies.

Andrea LaFollette has brought a cross-claim against Regions Bank which states *in toto* that she "hereby incorporates Defendant Helen Scott's Amended Cross Claim against Regions Bank, previously filed in this cause." (LaFollette's Answer and Cross-Claim at 8, Doc. 116).

Plaintiffs originally brought this action on September 16, 2008 in the Chancery Court of Sullivan County, Tennessee seeking a declaratory judgment pursuant to Tennessee law that they are the rightful beneficiaries of proceeds of the MetLife policies. MetLife, Regions Bank, and Helen Scott, as well as others who have since been dismissed, were named as defendants. Subsequently, on November 3, 2008, MetLife removed the action from the Chancery Court of

Sullivan County, Tennessee to this Court. As the basis for removal, MetLife contended that ERISA preempted the Plaintiffs' action brought under state law against MetLife. Plaintiffs moved on November 25, 2008 for the Court to remand the case back to the Chancery Court of Sullivan County on the ground that not all defendants consented to removal. Regions Bank also moved, on December 2, 2008, for the Court to remand the case back to the Chancery Court of Sullivan County for the reasons asserted by the Plaintiffs and because MetLife "has not pled facts which would demonstrate that the case is preempted by or even subject to ERISA." (Regions Bank's Memorandum in Support of Removal at 1, Doc. 22). Part of MetLife's response included the argument that ERISA did indeed pre-empt the Plaintiffs' claims against it because the proceeds Plaintiffs sought came from an employee welfare benefit plan and MetLife was the administrator and fiduciary under that plan. Further, "ERISA completely preempts any state law claim to recover benefits under an employee welfare benefit plan." (Metlife's Response at 2-3, Doc. 30). Helen Scott joined in Metlife's opposition to the motion to remand. (Helen Scott's Response, Doc. 35). The District Court denied Regions Bank's and the Plaintiffs' motions to remand finding that (1) "this action falls directly under the scope of [ERISA], 29 U.S.C. § 1132(a)(1)(B) because it is a suit brought by a beneficiary to recover benefits from a covered plan," and (2) the Plaintiffs' ERISA claims against MetLife are separate and independent from the Plaintiffs' otherwise nonremovable, state law claims brought against the other defendants, thus consent to removal by all defendants is not required. (January 1, 2009 Memorandum and Order at 6, 8, Doc. 44).

III. Discussion

*A. Standard of Review*

A motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6) is meant to test the sufficiency of the complaint; it does not resolve the facts of the case. *Thielen v. GMAC Mortg. Corp.*, __F.Supp.2d__, 2009 WL 4432584 *2 (E.D. Mich. Dec. 2, 2009); *Cox v. Shelby State Community College*, 48 Fed. Appx. 500, 503 (6th Cir. Sept. 24, 2002) (unpublished); *Metz v. Supreme Court of Ohio*, 46 Fed. Appx. 228, 233 (6th Cir. Aug. 19, 2002). In determining whether a party has set forth a claim in his complaint for which relief can be granted, all well-pleaded factual allegations contained in the complaint must be accepted as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). This tenet does not apply to legal conclusions set forth in a complaint. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (May 18, 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949. More than "unadorned, the-defendant-unlawfully-harmed me accusation[s]" are required to state a claim. *Id.* at 1949. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 1949 (brackets original)(quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S 544, 557 (2007)). Further, the complaint must also state "a plausible claim." *Id.* at 1950. Plausibility has been defined by the Supreme Court in the following manner:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Bell Atlantic Corp. v. Twombley,] 550 U.S. 544, 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " Id., at 557, 127 S.Ct. 1955 (brackets omitted).

5

*Id.* at 1949. In determining whether a complaint states a plausible claim for relief, the Court may draw on its judicial experience and common sense. *Id.* at 1950. Well-pleaded facts that permit the court to infer no more than a mere possibility of misconduct will not permit a complaint to survive a motion to dismiss. *Id.*

The Supreme Court in *Iqbal* suggests a two pronged approach to trial courts' reviewing motions to dismiss. *Id.* First, the court "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Next, [w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

### *B. Analysis*

Helen Scott and Andrea LaFollette argue the Plaintiffs' ERISA action brought under 28 U.S.C. § 1132(a)(1)(B) should be dismissed for the following, independent reasons: 1) Plaintiffs lack standing to bring their ERISA claim because they are not beneficiaries under ERISA, 2) Plaintiffs have failed to show that the proceeds paid to Helen Scott were the proceeds from the policy covered by the Trust agreement at issue, and 3) Plaintiffs have failed to exhaust their administrative remedies under ERISA before bringing their ERISA claim.

### *1. Plaintiffs Have Derivative Standing Under ERISA, 29 U.S.C. § 1132(a)(1)(B)*

Plaintiffs have brought an action under ERISA, 29 U.S.C. § 1132(a)(1)(B), as beneficiaries to recover benefits from an employee welfare benefit plan. Section 1132(a)(1)(B) provides in relevant part that "a civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of the plan...." A "plan" as used in Section 1132(a) is defined as an employee welfare benefit plan or an employee pension benefit plan or a combination of both. 29 U.S.C. § 1002(3). There is no dispute that the monies at issue are

derived from an employee welfare benefit plan, also referred to herein as an ERISA plan. The issue is whether Plaintiffs can be considered beneficiaries under ERISA, based on the allegations of their amended complaint, such that they have standing to bring a claim under 29 U.S.C. § 1132(a)(1)(B).

This issue of "standing" is a question of "statutory standing," not Article III standing under the Constitution. *See Bridges v. American Elec. Power Co., Inc.,* 498 F.3d 442, 444 (6th Cir. 2007). Section 1132(a)(1)(B) limits those who can bring an action to recover benefits from an ERISA plan to "participants" and "beneficiaries." 29 U.S.C. § 1132(a)(1)(B). Generally, a plaintiff who is not a participant or a beneficiary as defined by ERISA lacks standing to bring a claim under Section 1132(a)(1)(B). *Bridges,* 498 F.3d at 444; *Crawford v. Roane*, 53 F.3d 750, 754-55 (6th Cir. 1995); *Cobb v. Central States, Southwest and Southeast Areas Pension Fund*, 461 F.3d 632, 634-35 (5th Cir. 2006). In such an instance where the plaintiff lacks statutory standing and there is no other basis for subject matter jurisdiction besides the claim brought under Section 1132(a)(1)(B), then the Court lacks subject matter jurisdiction over the action. *See Cobb*, 461 F.3d at 635 n. 1; *see also*, *Ward v. Alternative Health Delivery Sys., Inc.*, 261 F.3d 624, 627 (6th Cir. 2001) (where plaintiff lacks standing as a beneficiary or participant to bring a claim under Section 1132(a)(1)(B) for ERISA benefits, remaining state claims must be remanded to state court.)

The term "beneficiary" is defined by 29 U.S.C. § 1002(8) which states, "[t]he term "beneficiary" means a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." Plaintiffs allege in their complaint that Herbert Scott designated the Trust as the beneficiary under the Plan, *i.e.*, the beneficiary of the MetLife policies. Plaintiffs further allege that under the terms of the Trust, they are the

7

beneficiaries of the Trust and are entitled to the proceeds of the MetLife policies. Therefore, assert the Plaintiffs, they are "beneficiaries" as defined by ERISA with standing to bring a claim under 29 U.S.C. § 1132(a).

Defendants argue the Plaintiffs are not "beneficiaries" as contemplated by ERISA. Citing Tenn. Code. Ann. § 35-50-103, Defendants argue that "although ERISA is silent as to whether the trustee is a participant or a beneficiary, Tennessee trust law is clear that when an insurance policy is to be paid to a trust, that [sic] the trustee is the beneficiary of the policy." (Defendants' Brief at 4, Doc. 110). Thus, the argument concludes, the Trust is the beneficiary of the ERISA plan at issue, not the Plaintiffs, and the Plaintiffs therefore lack statutory standing to bring a claim under ERISA to recover the proceeds of the MetLife policies. Defendants also assert that Plaintiffs do not "have third party beneficiary standing under ERISA, as ERISA does not countenance third party beneficiary claims." *Id.*

How ERISA defines a beneficiary of an employee welfare benefit plan governed by ERISA is a matter of discernment under ERISA, not state law. *McMillian v. Parrat*, 913 F.2d 310, 311 (6th Cir. 1990) ("The designation of beneficiaries plainly relates to these ERISA plans, and we see no reason to apply state law on this issue"); *accord*, *Krishna v. Colgate Palmolive Co.*, 7 F.3d 11, 14-16 (2d Cir. 1993) (see cases cited therein); *Belcher v. Prudential Ins. Co. of America*, 158 F.Supp.2d 777, 780 (S.D. Ohio 2001) ("determination of the proper beneficiary of an ERISA insurance policy is a federal question governed either by ERISA itself or by federal common law.") Thus, Tenn. Code Ann. § 35-30-103 is not applicable to the question of whether Plaintiffs are beneficiaries as defined by 29 U.S.C. § 1002(8).

As previously stated, a "beneficiary" is (1) a person designated by a participant, or (2) designated by the terms of an employee benefit plan, "who is or may become entitled to a benefit

thereunder." 29 U.S.C. § 1002(8). Simply claiming that one is a beneficiary does not give one standing as a beneficiary under ERISA; "one is only a beneficiary under § 1002(8) only if he has a reasonable or colorable claim for benefits under an ERISA plan." *Crawford v. Roane*, 53 F.3d 750, 754-55 (6th Cir. 1995). The question of law before the undersigned is whether an individual designated to receive benefits from a trust has standing to bring a claim under 29 U.S.C. § 1132(a)(1)(B) for those benefits where the benefits are from an ERISA employee welfare benefit plan and the trust was designated by the ERISA participant as the beneficiary of the employee welfare benefit plan. Under the doctrine of derivative standing, the undersigned finds the Plaintiffs have standing to bring this claim against MetLife.

Derivative standing under Section 1132(a)(1)(B) often arises in the context of assignment of ERISA healthcare benefits to a medical provider. *See e.g., Sisters of the Third Order of St. Francis v. SwedishAmerican Group Health Benefit Trust*, 901 F.2d 1369, 1370 (7th Cir. 1990) (a medical center which treated an ERISA plan participant for injuries sustained in a car accident had derivative standing as a beneficiary under ERISA where the plan participant had made a valid assignment of his health care benefits to the medical center); *Kennedy v. Connecticut General Life Ins. Co,*, 924 F.2d 698 (7th Cir. 1991) (Chiropractor who received valid assignment of healthcare benefits from plan participant had derivative standing to bring ERISA action against insurer for nonpayment of benefits.) *Hermann Hosp. v. MEBA Medical & Benefits Plan*, 845 F.2d 1286, 1289 (5th Cir.1988) (while hospital had no independent standing to bring action against ERISA plan for services rendered, the hospital had derivative standing to bring such a claim where the plan beneficiary had assigned her ERISA healthcare benefits to the hospital). The Sixth Circuit has also acknowledged that assignment of ERISA benefits confers derivative standing under Section 1132(a)(1)(B). *See Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d

1272, 1271 (6th Cir. 1991) ("a healthcare provider may assert an ERISA claim as a beneficiary of an employee benefit plan if it has received a valid assignment of benefits."); *see also Spectrum Health v. Valley Truck Parts*, 2008 WL 5273627 * 1-2 (W.D. Mich. Dec. 17, 2008) (holding a healthcare provider who has received a valid assignment of rights under an ERISA plan has derivative standing to bring a claim under ERISA for the payment of attorney's fees.)

The other form of derivative standing occurs when the party bringing an action under Section 1132(a)(1)(B) is a successor-in-interest to the original ERISA plan participant or beneficiary. For example, in *Cottle v. Metropolitan Life Ins. Co.*, 1993 WL 8201 (N.D. Ill Jan. 13, 1993), Herbert Irwin obtained health care benefits for himself and his wife through an ERISA welfare benefit plan at work. Mrs. Irwin died after her husband died and left a testamentary trust. The trustee of the testamentary trust was found to have derivative standing as the deceased beneficiary's successor-in interest in order to bring an action under ERISA to recover health care benefits for medical treatment Mrs. Irwin received before her death. *Id.* at *2. The court stated that "[f]or purposes of this ERISA action, ... the trustee stands in the shoes of the beneficiary, and thereby acquires derivative standing. ... To allow plaintiff to sue derivatively on behalf of the deceased beneficiary promotes ERISA's clear policy of 'protect[ing] ... the interests of participants in employee benefit plans and their beneficiaries.'" *Id.* (citing 29 U.S.C. § 1001(b)). *See also*, *Dudley v. Nisource Corp. Servs.,* Co., 2006 WL 1044457 (E.D. Ky. April 18, 2006) (holding estate of deceased ERISA plan participant may bring ERISA claim for participant's ERISA benefits stating "[c]ourts have held that administrators of a participant's estate have derivative standing to sue as participants."); *McKinnon v. Blue Cross/Blue Shield of Ala.*, 691 F. Supp.1314 (N.D. Ala. 1988) (daughter allowed to bring ERISA claim for plan benefits as personal representative of deceased father), *aff'd* 874 F.2d 820 (11th Cir. 1989); *Estate of Prince*

*v. Aetna Life Ins. Co.*, 2008 WL 4327049 (M.D. Fla. Sept. 18, 2008) (a deceased participant's estate has derivative standing to bring a claim under ERISA to clarify its rights to the deceased's ERISA plan benefits.)

The undersigned has found no case directly addressing whether beneficiaries of a trust, where the trust is the named beneficiary of an ERISA covered life insurance policy, have derivative standing to bring an action under Section 1132(a)(1)(B) for recovery of those life insurance benefits. The most analogous case the undersigned could find to the instant case is *Yarde v. Pan American Life Ins. Co.*, 840 F. Supp. 406 (D. S.C. 1994), *rev'd on other grounds and aff'd in relevant part*, 67 F.3d 298 (4th Cir. Sept. 12,1995) (unpublished). In *Yarde*, the ERISA plan participant bought a life insurance policy on his own life under the ERISA plan and named his mother as the beneficiary. Thereafter, the participant disappeared and, under state law, he could not be declared dead until seven years from the date of his disappearance. During the seven year period, the mother died leaving the participant's brother as the sole heir of the mother's estate. After expiration of the seven year period, the brother brought an action under Section 1132(a) to recover the proceeds of the policy as well as for interest and attorney's fees. Defendants asserted the brother was not a beneficiary and therefore lacked standing to bring a claim under ERISA. The *Yarde* court noted that the brother is "neither a participant or a beneficiary. Nevertheless, as the sole heir of the deceased beneficiary, [his mother], he is ultimately entitled to the death benefit of his brother." *Id.* at 409. The court held the brother had derivative standing to bring a claim under ERISA for the life insurance proceeds. *Id.* at 411. The court reasoned that granting derivative standing to the brother was "the only means available to give effect to the goals of ERISA," those goals being to protect the interests of participants in

11

employee benefit plans and their beneficiaries. *Id.* at 410-11 (citing *Coleman v. Champion Int'l Corp./Champion Forest Products*, 992 F.2d 530, 536 (5th Cir. 1993)).

Further, the undersigned also finds Plaintiffs Mark and Paul Scott are similar to healthcare providers who have received a specific assignment of ERISA benefits in that they (allegedly) have been specifically assigned the ERISA benefits at issue by the plan participant (their father) by means of the irrevocable Trust.

The undersigned concludes that giving the Plaintiffs derivative standing to bring their claim under Section 1132(a)(1)(B) for clarification of their rights to and recovery of the proceeds from their father's life insurance policies would further the goal of ERISA – to protect the interests of the participants and their beneficiaries.[2] However, before the undersigned can recommend that the District Court find Plaintiffs have standing, the undersigned must first consider Defendants' remaining arguments that Plaintiffs do not have a "colorable claim" to the proceeds of the MetLife policies.

---

[2] In their complaint, Plaintiffs also allege as an alternative basis for standing that they are third-party beneficiaries of the MetLife policies. (Amended Complaint ¶ 11, Doc. 108). A party cannot attain standing under Section 1132(a)(1)(B) on the sole ground that it is third-party beneficiary. *See Dallas County Hosp. Dist. v. Associates' Health and Welfare Plan,* 293 F.3d 282, 289 (5th Cir. 2002) (a healthcare provider does not have standing to bring an ERISA claim on the sole ground that it is a third party beneficiary to the healthcare benefits; there must be a valid assignment of benefits). As discussed herein, a healthcare provider who has a valid assignment of ERISA benefits from an ERISA plan participant or beneficiary will have standing to bring a claim under Section 1132(a)(1)(B) whereas a healthcare provider who lacks such an assignment, claiming only that it is a third-party beneficiary to the ERISA benefits, does not. *Id* The valid assignment of ERISA benefits is the crucial difference between being able to maintain an ERISA action or not.

## 2. Plaintiffs Have a Colorable Claim to the Proceeds of the Metlife Policies

### a. Plaintiffs Have Sufficiently Alleged They are Beneficiaries of the Trust

Defendants argue Plaintiffs do not have a colorable claim to the proceeds of the MetLife policies because Plaintiffs are not beneficiaries under the Trust. A copy of the Trust at issue is attached to the Amended Complaint and therefore becomes part of the Amended Complaint. *See* Fed. R. Civ. P. 10 (c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.") Section VI B of the Trust which designates the beneficiary(ies) states in relevant part:

> B. Upon the death of Grantor's wife, Sarah Oneida Covington Scott, or upon Grantor's death if Grantor's wife shall predecease him, the Trustee shall divide the trust estate into Two (2) equal parts, one of which shall be distributed to each of Grantor's children, Mark Andrew Scott and Paul Ethan Scott, and any later children born of Grantor's marriage to his wife, Sarah Oneida Covington Scott.

(Trust at p. 5, attached as Ex. A to Amended Complaint, Doc. 108-1; hereinafter cited to as "Trust at p. __".) Defendants argue that the only reasonable interpretation of this language, (hereinafter referred to as Section VI B), is that Section VI B establishes a condition precedent to Plaintiffs' becoming beneficiaries of the Trust and that condition precedent has not been met. The condition precedent, contend Defendants, is the death of Herbert Scott's wife, and Helen Scott – Herbert Scott's wife -- is not dead. According to Defendants, "[t]he name of Grantor's wife is conspicuously absent from the condition: 'upon Grantor's death if Grantor's wife shall predecease him.' Accordingly, by giving the words of the Trust Agreement their plain meaning, Plaintiffs were not beneficiaries under the Trust Agreement because Grantor's wife was alive at the time of his death." (Defendants' Brief in Support of their Motion to Dismiss at 5, Doc. 110).

In Tennessee, a written agreement is to be interpreted in the following manner:

> The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles. If the
13

> language of the contract is clear and unambiguous, the literal meaning controls the outcome of the dispute. In such a case, the contract is interpreted according to its plain terms as written, and the language used is taken in its plain, ordinary, and popular sense. The interpretation should be one that gives reasonable meaning to all of the provisions of the agreement, without rendering portions of it neutralized or without effect. The entire written agreement must be considered.

*Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 703-04 (Tenn. 2008) (internal citations omitted). Further, "'[a]mbiguity ... does not arise in a contract merely because the parties may differ as to interpretations of certain of its provisions. A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one.'" *Id.* at 704 (quoting *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001)).

The undersigned finds Defendants' argument unpersuasive. The clause, "upon Grantor's death if Grantor's wife shall predecease him" is immediately preceded, *within the same sentence*, by the clause, "[u]pon the death of Grantor's wife, Sarah Oneida Covington Scott." A common sense, fair, and "plain meaning" interpretation of this sentence indicates that "Grantor's wife," as used through the entire sentence, refers to "Sarah Oneida Covington Scott." A single sentence is meant to be read as a whole; parsing one clause from another as if they had no connection amounts to hyper-technical nonsense. It is unnecessary to identify the "Grantor's wife" when she has already been identified in the preceding clause of the same sentence. Further, the undersigned notes that where the grantor intended to refer to a person other than one specifically identified within the same sentence, he did so clearly; *to wit,* "the Trustee shall divide the trust estate into Two (2) equal parts, one of which shall be distributed to each of Grantor's children, Mark Andrew Scott and Paul Ethan Scott, *and any later born children of Grantor's marriage* to his wife, Sarah Oneida Covington Scott." If Herbert Scott had intended Section IV B to refer to a future wife in the event Sarah Oneida Covington Scott died and he later remarried, he would

14

have said so– but he did not.  In sum, the undersigned finds Defendants' argument lacking in merit. ³

### b.  Plaintiffs Have Sufficiently Alleged the Life Insurance Proceeds Paid to Helen Scott Were the Same Proceeds to Be Paid into the Trust

Defendants further argue "Plaintiffs have failed to make out a colorable claim as beneficiaries because they have failed to show that the life insurance proceeds paid to Defendant Helen Scott were the policy proceeds covered by the Trust Agreement." (Defendants' Brief at 6, Doc. 110.)  Defendants note the Amended Complaint alleges MetLife policies 24863 and 17565 were assigned to the Trust but the Trust "explicitly covers MetLife Policy Number 17565-G only."  *Id.*  The Trust refers to "(2) certificates or policies of insurance issued on his [Herbert Scott's] life, described as follows: one (1) issued by John Hancock Mutual Life Insurance Company under Tennessee Eastman Company Group Policy No. 1127-G... ; and the other issued by Metropolitan Life Insurance Company under Eastman Kodak Company Policy No. 17565-G." (Trust at p. 1).  The Amended Complaint identifies the life insurance policies at issue as "Policy Numbers 24863 and 17565" issued by MetLife. (Amended Complaint at ¶ 14A, Doc. 108).  However, paragraph 16 of the Amended Complaint states,

---

³The Trust provides Tennessee law applies to its administration. (Trust at p. 8).  The parties do not discuss whether the court should apply Tennessee law or federal common law in interpreting the meaning of "Grantor's wife" used within the particular sentence at issue.  Nevertheless, whether one applies Tennessee law or federal common law, the outcome would be the same.  Under federal common law,
> The general principles of contract law dictate that courts should interpret ERISA plan provisions according to "their plain meaning, in an ordinary and popular sense." *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir.1998).  Interpretation and construction of the terms of an ERISA plan is a matter of law for the court. *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1511 (10th Cir.1996).

*Minahan v. LESCO, Inc.*, 2008 WL 4186924 (N.D. Ohio, Set. 5, 2008).  As previously discussed, when interpreting "Grantor's wife" in its plain, ordinary meaning, within the context of the entire sentence, the undersigned concludes the term refers to Sarah Oneida Covington Scott.

15

in the alternative should the life insurance polices identified in paragraph 14.A
above have been exchanged, replaced or substituted with new life insurance
policies, then, and in that event, Plaintiffs aver that the Trust is the proper
beneficiary of said life insurance policies and that it is entitled to the proceeds
from the same.

(Amended Complaint ¶ 16, Doc. 108). When considering the allegations of ¶ 16 in the light most favorable to Plaintiffs, the undersigned concludes that Plaintiffs have sufficiently alleged that the Trust was entitled to the proceeds of the life insurance policies which were paid to Helen Scott. Thus, this argument is also not a basis for dismissal of Plaintiffs' ERISA claim.

> *c. Plaintiffs Have Sufficiently Alleged They Exhausted Their Administrative Remedies Before Bringing Their Claim under Section 1132(a)(1)(B).*

Finally, Defendants argue Plaintiffs' ERISA claim under Section 1132(a)(1)(B) is barred because Plaintiffs failed to exhaust their administrative remedies as required under 29 U.S.C. § 1133. Exhaustion of remedies is generally required before a party may challenge a plan administrator's decision in court. *See Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991). 29 U.S.C. § 1133 requires the plan administrator, in addition to providing detailed reasons for a denial of benefits, "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 C.F.R. 2560.503-1(g) sets forth in greater detail the information which must be provided in a benefits denial notice including a "description of the plan's review procedures and the time limits applicable to such procedures." If the plan administrator fails to comply with the notice requirement, then the exhaustion of remedies requirement is deemed waived. 29 C.F.R. § 2560.503(l).[4]

---

[4] 29 C.F.R. § 2560.503(l) provides:

Failure to establish and follow reasonable claims procedures. In the case of the
failure of a plan to establish or follow claims procedures consistent with the

16

Defendants contend the letter Metlife sent to Plaintiffs' "personal representative" on July 16, 2008, meets ERISA notice requirements. (*See* MetLife's July 16, 2008 Letter, Ex. G attached to Amended Complaint, Doc. 108-7). MetLife's July 16, 2008 letter informs Plaintiffs that after an assistant branch manager at AmSouth Bank (Regions Bank's predecessor) in Bristol, Tennessee, informed MetLife that AmSouth Bank has no "current assignment in favor of AmSouth Bank" for H. Andrew Scott, (*see* Letter from Asst. Branch Mgr., AmSouth Bank, Ex. H to Amended Complaint, Doc. 108-8), Metlife paid the proceeds of "Eastman Kodak group policy 17565" "per the Eastman Kodak contract to the first surviving heir in this line of preference: Spouse, Child, Parents, Estate." *Id.* The July 16, 2008 letter further states, "On July 27, 2007 the proceeds of this policy were disbursed and accordingly the file has been settled and is now closed. Our liability has been satisfied." *Id.*

In addition to the fact that there is nothing in MetLife's letter about a review process available to the Plaintiffs to appeal MetLife's decision to pay the life insurance proceeds to Helen Scott, MetLife's letter indicates unequivocally that the matter is closed as far as MetLife is concerned – there is no avenue of appeal for the Plaintiffs. Plaintiffs allege that MetLife failed to comply with 29 U.S.C. § 1133 to provide a mechanism for administrative appeal and therefore "[t]hese avenues of appeal are deemed exhausted." (Amended Complaint ¶ 12, Doc. 108). Because MetLife's July 16, 2008 letter and the June 13, 2007 letter from the AmSouth Assistant Branch Manager are attached to the Amended Complaint, they are considered part of the Amended Complaint. Fed. R. Civ. P. 10 (c). Since Plaintiffs' Amended Complaint, including the

---

> requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

17

Case 2:08-cv-00296-JRG-WBC   Document 149   Filed 01/26/10   Page 17 of 18   PageID #: 884

documents attached thereto, sufficiently allege Metlife failed to provide an avenue of appeal for Plaintiffs, I conclude Plaintiffs have adequately pled that the exhaustion of remedies requirement has been waived.[5]

### IV. Conclusion

Plaintiffs have adequately alleged in their Amended Complaint that they are the beneficiaries of the Trust and that the Trust was designated by Herbert Scott, the participant of the ERISA plan at issue, as the beneficiary of the MetLife policies. Plaintiffs have a colorable claim to the proceeds of the Metlife policies and have derivative standing to bring their claim under Section 1132(a)(1)(B) to recover the proceeds of the MetLife polices. Therefore, it is RECOMMENDED that Helen Scott's Motion to Dismiss be DENIED.[6]

SO ORDERED.

ENTER:

Dated: January 26, 2010           s/William B. Mitchell Carter
                                  UNITED STATES MAGISTRATE JUDGE

---

[5] While Plaintiffs raise other reasons to deny Defendants' motion to dismiss, it is unnecessary to address them since the undersigned has already found other, adequate reasons to deny this motion.

[6] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).