IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENVILLE

| | | |
|---|---|---|
| MARK A. SCOTT and PAUL E. SCOTT | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | CASE NO. 2:08-cv-296 |
| | ) | |
| v. | ) | Greer/Carter |
| | ) | |
| REGIONS BANK, *et al.*, | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I. Introduction

Defendant Helen Scott and Andrea LaFollette (the Defendants) have filed a motion to

strike paragraphs 14-C, 36, 37, 40, 41, and 42 of the Amended Complaint pursuant to Fed. R.

Civ. P. 12(f) on the ground that these portions of the Amended Complaint are "scandalous and do

not meet the special pleading requirements of Fed. R. Civ. P. 9(b)." [Doc. 114].   Plaintiffs Mark

Scott and Paul Scott bring this action seeking proceeds from two life insurance policies obtained

by their father and administered by defendant Metropolitan Life Insurance Company (MetLife).

This motion is before the undersigned Magistrate Judge having been referred for a report and

recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the

reasons stated herein, it is RECOMMENDED that the Defendants' motion to strike be DENIED

with prejudice in part and DENIED without prejudice in part.

### II. Background

The basic allegations of the Plaintiffs' Amended Complaint are as follows:  Plaintiffs,

brothers Mark and Paul Scott, brought this action to recover life insurance proceeds from two

1

policies administered by MetLife (the MetLife policies) and issued on the life of Herbert Andrew

Scott, deceased. Mark and Paul Scott are the only children resulting from the marriage of

Herbert Andrew Scott and his first wife, Sarah, who died in 1983. Herbert Scott married Helen

Scott in 1984. Andrea Scott is Helen Scott's daughter and Herbert Scott's step-daughter.

The MetLife policies were issued to Herbert Scott through his employment at Eastman

Kodak Company and its subsidiary, Tennessee Eastman Kodak Company. Plaintiffs' father

assigned these MetLife policies to an irrevocable trust (the Trust) to which Mark and Paul Scott,

in 2006, were the sole beneficiaries. The Trust was established on or about September 13, 1973.

First National Bank of Sullivan County was originally designated as the trustee of the Trust.

First National Bank of Sullivan County was succeeded by AmSouth Bank which was then

succeeded by Regions Bank. Regions Bank is currently the trustee charged with administering

the Trust.

Plaintiffs also make a number of allegations in the Amended Complaint relating to

Plaintiffs' claims against the Defendants brought under state law for intentional

misrepresentation, conversion, fraud, tortious interference with the contract of another, and

conspiracy to engage in the tortious interference with the contract of another. These allegations,

including those from the paragraphs Defendants ask the Court to strike, are set forth below.

*Those paragraphs which Defendants ask the Court to strike, ¶ ¶ 14-C, 36, 37, 40, 41, and 42, are*

*set forth below in italicized type.*

"Mr. Scott died in December, 2006, and MetLife paid the insurance proceeds to

Defendant Helen Scott. Defendant Helen Scott is not the beneficiary under the policies. (Am.

Comp. ¶ 14A.).

2

> *Plaintiffs are the beneficiaries under the Trust established by Mr. Scott. After his death, the Defendants Helen Scott and LaFollette, knowing that Plaintiffs were the beneficiaries under the Trust to the MetLife insurance policies, and assisted by an employee of Edward Jones, surreptitiously caused MetLife to pay the insurance proceeds to Defendant Helen Scott, depriving the rightful owners, the Plaintiffs, of said proceeds. The Defendants engaged in intentional misrepresentation, negligent misrepresentation, conversion, fraud, tortuous [sic] interference with the contract of another, and conspiracy to defraud Plaintiffs.*

*Id.* at ¶ 14C. MetLife was notified of Mr. Scott's death on February 1, 2007. *Id.* at ¶ 28. From June 18, 2007 to December 11, 2007, Patrick Hull, the attorney for Herbert Scott's estate, sent five letters to AmSouth Bank, which later became Regions Bank, notifying it of Herbert Scott's death and asking for information about the Trust. *(Id.* at ¶ 30, *see also* Hull letters, Collective Ex. E attached to Am. Comp., Doc. 108-5[1]). From June 2007 to July 2008, the Plaintiffs and Mr. Hull contacted Helen Scott and Andrea LaFollette, who had her mother's power of attorney, about the proceeds from the MetLife policies and they "continuously denied" that Helen Scott had received the proceeds. (Am. Comp. at ¶ 31; *see also* Oct. 31, 2007, Letter from Hull to Dallas Blair, Senior Trust Specialist at Regions Morgan Keegan Trust, Ex. F to Am. Comp., Doc. 108-6). By letter dated July 16, 2008, MetLife acknowledged that the proceeds of the MetLife policies had been paid to Helen Scott on July 27, 2007. (Am. Comp. ¶ 33; *see also* MetLife letter, Ex. G to Am. Comp., Doc. 108-7[2]. MetLife stated in its July 16, 2008 letter:

> When we received the report of the insured's death we contacted Amsouth Bank. ... We spoke to Assistant Branch Manager, Brittany L. Autry with the [sic] Amsouth in Bristol, TN. She advised us that she found no records with regard to any trust for this individual. The claim was treated as if no beneficiary existed.

---

[1]Pursuant to Fed. R. Civ. P. 10(c), "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

[2]MetLife sent this letter to Anna Scott who is an attorney and the daughter of Plaintiff Mark Scott.

Payment therefore was made per the Eastman Kodak contract to the first surviving heir in this line of preference: Spouse, Child, Parents, Estate.

(Ex. G to Am. Comp., Doc. 108-7).

Shortly after Herbert Scott's death, Mark Scott, Helen Scott, and Andrea LaFollette were going through Herbert Scott's important papers. Helen Scott found the Trust Agreement, gave it to Mark Scott, and stated, "This is for you." (Am. Comp. ¶ 34). Thereafter, these same individuals met with Patrick Hull to discuss probating Herbert Scott's estate. Mark Scott gave the Trust Agreement to Mr. Hull, and, at that time, Helen Scott and Andrea LaFollette admitted that the life insurance proceeds belonged to Plaintiffs. (Am. Comp. ¶ 35).

Plaintiffs further allege,

> *upon information and belief ... Defendant Helen Scott and Defendant Lafollette surreptitiously contacted MetLife claiming ownership of the MetLife insurance proceeds. Then, Defendant Lafollette or an employee of Defendant Edward Jones contacted an assistant branch manager of Defendant Regions Bank representing herself to be the daughter of Mr. Scott, and caused the assistant branch manager of the Bank, not associated with the Trust Department, to prepare a letter addressed to "Whom It May Concern re H. Andrew Scott" advising that there was not a current assignment in favor of the Bank on "the above referenced client." This letter was then faxed to Defendant Edward Jones.*[3]

(*Id.* at ¶ 36, *see also* June 13, 2007 letter from Brittany Autry to "To Whom It May Concern," Ex. H to Am. Comp.)

Under the section of the Amended Complaint entitled "Causes of Action as to Defendants Helen Scott, LaFollette and Edward Jones," Plaintiffs allege :

- *Helen Scott and LaFollette knowingly converted the proceeds of the MetLife policies which properly belonged to Plaintiffs* (Am. Comp. ¶ 37),

---

[3]Edward Jones is identified in the Amended Complaint as Edward Jones and Associates, a Florida company authorized to do business in Tennessee. (Am. Comp. ¶ 7, Doc. 108).

4

- *Helen Scott and LaFollette intentionally and with malice interfered with the known business relationships of the Plaintiffs, Regions Bank and MetLife causing damage to the Plaintiffs* (Am. Comp. ¶¶ 40-41), and

- *Helen Scott, LaFollette, and Edward Jones entered into a conspiracy to engage in tortious interference with the contracts between Plaintiffs, Regions Bank, and MetLife.* (Am. Comp. ¶ 42).

## III. Discussion

### A. Analysis Under Rule 12(f)

Fed. R. Civ. P. 12(f) provides that the Court in its discretion "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Striking pleadings is a drastic remedy and motions to strike pleadings are disfavored. Generally, motions to strike pleadings are denied unless "the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more parties to the action." 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 3d § 1382 (3d ed. 2004); *see Parlak v. United States Immigration and Customs Enforcement*, 2006 WL 3634385, * 1 (6th Cir. April 27, 2006); *Anderson v. United States*, 39 Fed. Appx. 132, 135 (6th Cir. 2002); *Brown & Williamson Tobacco Corp. v. United States,* 201 F.2d 819, 822 (6th Cir. 1953); *D.B. v. Lafon*, 2007 WL 896135, * 1 (E.D. Tenn. March 22, 2007); *Mayes v. Environmental Protection Agencey*, 2006 WL 2709237, ** 4-5 (E.D. Tenn. Sept. 20, 2006); *Monsanto Co. v. Potts*, 2005 WL 1514130, * 2 (S.D. Ohio June 24, 2005); *F.D.I.C. v. Berry*, 659 F. Supp. 1475, 1479 (E.D. Tenn. 1987).

5

Because the undersigned cannot say that paragraphs 14-C, 36, 37, 40, 41, and 42 of the Amended Complaint have no possible relation or logical connection to the subject matter of the instant controversy, the undersigned will recommend the Defendants' request to strike these paragraphs be DENIED with prejudice.

### B. Analysis Under Rule 9(b)

Defendants also ask the Court to strike paragraphs 14-C, 36, 37, 40, 41, and 42 of the Amended Complaint on the ground that each of these paragraphs, individually and in isolation from all other paragraphs of the complaint, fail to meet the particularity requirements of Rule 9(b). Rule 9(b) provides, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

The paragraphs which Defendants ask the Court to strike contain allegations which are clearly connected with and relate to each other and the allegations of the other paragraphs in the Amended Complaint – allegations which are part of a single, continuing course of related fraudulent conduct (allegedly) on the part of Defendants. Defendants have cited no authority in support of their assertion that, in such an instance, the Court should examine each paragraph in isolation from the rest of the Amended Complaint to determine if each individually meets the Rule 9(b) particularity requirements.[4] Nor could the undersigned find such authority.

---

[4] *Compare United States ex. rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 444 (6th Cir. 2008) wherein the Court held "Courts must proceed paragraph-by-paragraph to ensure compliance with Rule 9(b) 'if the paragraphs of a relator's complaint allege *separate and unrelated fraudulent conduct*.'" (emphasis added) (citing *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 509 (6th Cir.2007)).

6

Where a party is alleging the plaintiff has failed to comply with the particularity requirements of Rule 9(b), the argument is generally raised in the context of a motion to dismiss. *See e.g.*, *United States ex rel. SNAPP, Inc. v. Ford Motor Company,* 532 F.3d 496, 502 (6th Cir. 2007); *United States ex. rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 444 (6th Cir. 2008); *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 509 (6th Cir.2007); *Saltire Indus., Inc. v. Waller, Lansden, Dortch & Davis PLLC,* 491 F.3d 522, 525 (6th Cir. 2007); *Moross Ltd. Partnership v. Fleckenstein Capital, Inc.*, 466 F.3d 508, 512 (6th Cir. 2006).

When a party moves to dismiss on the ground that the complaint fails to meet the specificity requirements of Rule 9(b), the motion is treated as one for dismissal under Fed. R. Civ. P. 12(b).  *Ford Motor Company,* 532 F.3d at 502 (citing *Cmty. Health System, Inc.*, 501 F.3d at 502).  A motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6) is meant to test the sufficiency of the complaint; it does not resolve the facts of the case. *Thielen v. GMAC Mortg. Corp.*, __F.Supp.2d__, 2009 WL 4432584 *2 (E.D. Mich. Dec. 2, 2009); *Cox v. Shelby State Community College*, 48 Fed. Appx. 500, 503 (6th Cir. Sept. 24, 2002) (per curiam); *Metz v. Supreme Court of Ohio*, 46 Fed. Appx. 228, 233 (6th Cir. Aug. 19, 2002).  In determining whether a party has set forth a claim in his complaint for which relief can be granted, the Court considers the complaint in its entirety and examines and accepts as true all well-pleaded factual allegations in the complaint. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

 The undersigned declines Defendants' invitation to examine paragraphs 14-C, 36, 37, 40, 41, and 42 individually and in insolation from all other paragraphs of the Amended Complaint to determine if the particularity requirements of Rule 9(b) have been met.  To do so would be to

apply the incorrect standard to this motion brought under Rule 9(b). Defendants have not addressed the issue of whether and which of Plaintiffs' various causes of action fail to meet the particularity requirements when considering the Amended Complaint in its entirety. The Court should not address what the Defendants have not raised. Otherwise, Plaintiffs will not have received prior notice of the alleged deficiencies in their Amended Complaint. Thus, the undersigned concludes Defendants' motion to strike for failure to comply with Rule 9(b), which is in fact a motion to dismiss, should be denied without prejudice.

Denying this motion to dismiss without prejudice will give Defendants the opportunity to raise the issue of particularity under Rule (9)(b) under the proper standard. If Defendants choose to do so, Defendants should identify the elements of each cause of action they contend should be dismissed for failure to comply with Rule 9(b) and explain, in light of the elements of the claim and the Amended Complaint as a whole, those particulars required by Rule 9(b) which they contend are missing.

## IV. Conclusion

For the reasons stated herein, its is RECOMMENDED that Defendants Helen Scott and

Andrea LaFollette's Motion to Strike pursuant to Rule 12(f) be DENIED *with* prejudice and their

Motion to Strike pursuant to Rule 9(b) be DENIED *without* prejudice.[5]


Dated:  January 28, 2010        *s/William B. Mitchell Carter*
                                         UNITED STATES MAGISTRATE JUDGE

---

[5]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure.  Failure to file objections within the time specified waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general.  *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).

9